IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JEAN FINCH,**

        **Plaintiff,**

v.                                                                 **No. CIV-11-0771 JCH/LAM**

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Decision of the Commissioner and Brief in Support Thereof (Doc. 24)*, filed in this case on March 14, 2012. Defendant filed a response to the motion on May 14, 2012. [*Doc. 25*]. No reply has been filed, and the time for doing so has passed. *See* **Order Setting Briefing Schedule** *(Doc. 22)* (setting a deadline of May 29, 2012 for Plaintiff to file a reply). United States District Judge Judith C. Herrera referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. **Order of Reference** *(Doc. 16)*. The Court has reviewed Plaintiff's motion and Defendant's response, and relevant law. Additionally, the Court has

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

meticulously reviewed and considered the entire administrative record. [*Docs. 18* and *19*].[2] For the reasons set forth below, the Court recommends that ***Plaintiff's Motion to Reverse or Remand Decision of the Commissioner and Brief in Support Thereof (Doc. 24)*** be **DENIED**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **AFFIRMED**.

## I.  Procedural History

On June 1, 2007, Plaintiff protectively filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"). [*Doc. 18-7* at 2-7 and 8-10].[3]  In her application for DIB and Disability Report, Plaintiff alleged that she became disabled on October 12, 2005. [*Doc. 18-7* at 8] and [*Doc. 18-8* at 7].[4]  Plaintiff stated that she became unable to work due to "Fybromyalgia to the back area." [*Doc. 18-8* at 7].  Plaintiff's applications were denied at the initial level on September 14, 2007 (*Doc. 18-5* at 6-8 and 9-12), and at the reconsideration level on January 16, 2008 (*id.* at 15-17 and 18-20). Administrative Law Judge Ben Willner (hereinafter "ALJ") conducted a hearing on January 28, 2010. [*Doc. 18-3* at 29-67]. Plaintiff was present and testified at the hearing (*id.* at 34-59), and was represented by counsel at the hearing (*id.* at 31). Vocational expert (hereinafter "VE"), Judith Beard, was also present and testified at the hearing. *Id.* at 59-66.

---

[2]Citations to the Record (*Docs. 18* and *19*) are to the Court's CM-ECF page numbers in this document.

[3]The Court notes that the dates on the applications are June 4, 2007 (*Doc. 18-7* at 2 and 8), but the parties and the Administrative Law Judge all agree that Plaintiff's protective filing date was June 1, 2007 (*see Doc. 24* at 2, *Doc. 25* at 2, and *Doc. 18-3* at 11).  The Social Security Administration explains that: "Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement.  Protective filing dates may allow an individual to have an earlier application date than the actual signed application date."  *See* Social Security Disability Resource Center http://www.ssdrc.com/disabilityquestionsmain20.html, last accessed October 18, 2012.

[4]At the January 28, 2010 hearing, Plaintiff amended her onset date to June 22, 2006.  [*Doc. 18-3* at 34].

On July 20, 2010, the ALJ issued a decision denying Plaintiff's applications and finding that she is not disabled within the meaning of the Social Security Act. [*Doc. 18-3* at 11-20]. On September 17, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision (*Doc. 18-6* at 33-39), and, on July 2, 2011, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner (*Doc. 18-3* at 2-4). On August 30, 2011, Plaintiff filed her complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if

it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI and DIB, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity;" and (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Krauser v. Astrue,* 638 F.3d 1324, 1326 (10th Cir. 2011)*; Wilson*

4

*v. Astrue,* 602 F.3d 1136, 1139 (10th Cir. 2010); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on August 22, 1966. [*Doc. 18-8* at 2]. Plaintiff testified that she completed the tenth grade. [*Doc. 18-3* at 35]. Plaintiff has worked as a "CNA," a dispatcher, an "EMT," and at a "Temp job." [*Doc. 18-8* at 8 and 26]. Plaintiff alleges that she became disabled on October 12, 2005, and she is unable to work due to "Fybromyalgia to the back area." *Id.* at 7.

Plaintiff's medical records document treatment from Lovelace Sandia Health System (*Doc. 19-1* at 5-25); Lovelace (*id.* at 26-36); Lovelace-Sandia MGO (*id.* at 54-56); and ABQ Health Partners (*Doc. 19-2* at 8-71 and *Doc. 19-3* at 1-24, 38-41 and 55-57). Plaintiff's medical records include: a Disability Determination Examination by Bryan Wayne, M.D., CMCE, dated August 18, 2007 (*Doc. 19-1* at 38-40); a Physical Residual Functional Capacity Assessment by Janice Kando, M.D., dated September 4, 2007 (*id.* at 42-49); a Case Analysis by Mark A. Werner, M.D., dated January 16, 2008 (*id.* at 58); two Medical Source Statements by Julie Muche M.D., both dated December 24, 2009 (*Doc. 19-3* at 26-31 ("Cervical Spine") and 32-36 ("Fibromyalgia")). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 22, 2006, Plaintiff's amended onset date of her disability. [*Doc. 18-3* at 13]. At step two, the ALJ found that Plaintiff "has the following severe impairment:

myofascial pain." *Id.*[5] At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 14.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work "with the following postural limitations: she can occasionally climb, balance, stoop, kneel, crouch or crawl." *Id.* In support of the RFC finding, the ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are credible to the extent they are consistent with the [RFC] assessment." *Id.* at 15. Examples of these inconsistencies noted by the ALJ include: Plaintiff testified at the January 28, 2010, hearing that she had not driven in about five years, yet during her consultative examination on August 18, 2007, she reported that she drives a car; she reported problems with walking, but during the consultative examination, she was observed walking; and she reported on October 29, 2009 that she occasionally used marijuana, and then testified to a one-time use of marijuana just prior to a urine test. *Id.* at 19. At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a dispatcher. *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 20.

## V. Analysis

Plaintiff contends that the ALJ's decision should be remanded for two reasons: First, because the ALJ improperly disregarded two opinions from Plaintiff's treating physician, Julie Muche, M.D.;

---

[5]"Myofascial" is defined as "[o]f or relating to the fascia surrounding and separating muscle tissue," and "fascia" is defined as "[a] sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups." *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 1173 and 647.

and second, because the ALJ committed error in rejecting Plaintiff's testimony regarding her pain. [*Doc. 24* at 13-16].  As relief, Plaintiff asks the Court to remand this case for another hearing.  *Id.* at 16.  Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence.  [*Doc. 25* at 4-7].

### *A.  The ALJ's Consideration of Dr. Muche's Opinions*

Plaintiff's first claim is that the ALJ erred in rejecting two opinions by Plaintiff's treating physician, Dr. Muche.  [*Doc. 24* at 13].  Plaintiff contends that Dr. Muche's "opinions are supported by her treating notes, the amount of pain medication she prescribed, trigger point injections given and the objective medical evidence."  *Id.*  Plaintiff further contends that Dr. Muche's opinions are "not inconsistent" with Dr. Kumar's opinion, to which the ALJ gave greater weight.  *Id.* at 15.  Defendant contends that the ALJ properly evaluated Dr. Muche's December 2009 medical source statements, that "[t]he ALJ correctly noted that Dr. Muche's statements were based heavily on Plaintiff's subjective reports of symptoms and limitations" and were not based on any objective diagnostic testing, and that they were inconsistent with other medical evidence in the record. [*Doc. 25* at 4-5].

"When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007).  First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."  *Id.* (citations omitted).  If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight," but if the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser

weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (citation and internal quotation marks omitted).

Here, the ALJ addressed Dr. Muche's medical source statements and found that they were inconsistent with the evidence in the record and that Dr. Muche relied heavily on Plaintiff's subjective report of symptoms and limitations. [*Doc. 18-3* at 19]. The ALJ noted that Dr. Wayne's consultative examination report found that Plaintiff was able to sit, stand, walk, lift 20 pounds frequently, and did not have a postural or manipulative or environmental limitation. *Id.* (citing *Doc. 19-1* at 38-40). The ALJ further noted that Dr. Kumar's physical examination of Plaintiff "revealed no obvious synovitis in her hands or in her feet" and that Plaintiff's range of motion of her shoulders, elbows, wrists, knees, and ankles, as well as her gait, seemed normal. [*Doc. 18-3* at

19].[6] The ALJ stated that he afforded Dr. Muche's opinions little weight and afforded the opinions of Drs. Wayne and Kumar significant weight because they "are consistent with the overall medical evidence" whereas Dr. Muche's opinions are not. [*Doc. 18-3* at 19].

Having noted that Dr. Muche's opinions were not supported by the evidence in the record, the ALJ then weighed Dr. Muche's opinions using the 20 C.F.R. § 404.1527(c) factors. In explaining why he gave Dr. Muche's opinions less weight, the ALJ stated that Dr. Muche relied heavily on Plaintiff's subjective report of symptoms and limitations, and specifically referenced where Dr. Muche's opinions conflicted with Dr. Wayne's consultative examination report and Dr. Kumar's physical examination of Plaintiff. [*Doc. 18-3* at 19]. The Court finds that the ALJ, thus, properly evaluated Dr. Muche's medical opinions by first determining whether they were consistent with the evidence in the record, and then, after finding that they were not, by explaining which parts of Dr. Muche's opinions the ALJ was discounting and why. The ALJ's consideration of Dr. Muche's opinions contains reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and internal quotation marks omitted) (holding that the ALJ's statement that he gave "very little weight" to opinions of various treating physicians because those physicians "did not have the opportunity to see or did not give weight to contrary evidence showing [the plaintiff's] greater functional capacity," coupled with the ALJ's citation to contrary, well-supported medical evidence, satisfied the requirement to consider the plaintiff's treating physician's opinions). The Court, therefore, finds that this claim should be denied.

---

[6]"Sinovitis" is defined as "[i]nflamation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." *Stedman's Medical Dictionary* at 1773.

### *B. The ALJ's Consideration of Plaintiff's Pain Testimony*

Next, Plaintiff contends that the ALJ erred by rejecting Plaintiff's testimony regarding her pain. [*Doc. 24* at 15-16]. Defendant contends that the ALJ properly discounted Plaintiff's subjective complaints regarding her pain. [*Doc. 25* at 6-7].

Pursuant to *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987), if a pain-producing impairment is demonstrated by objective medical evidence, the ALJ must consider whether there is a nexus between the impairment and the alleged pain and, if there is, the ALJ must next consider all of the relevant evidence to determine whether the claimant's pain is in fact disabling. This evidence includes medical evidence in the record, "any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain." *Id.* "Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain." *Id.*

In discussing Plaintiff's medical records, the ALJ noted that in 2005, Plaintiff "was treated for mid back pain, etiology unclear, and myofascial pain" after suffering a fall, and that an MRI of the thoracic spine taken on November 15, 2005 "showed no disc herniation, central canal stenosis or cord encroachment." [*Doc. 18-3* at 15] (citing *Doc. 19-2* at 16). The ALJ noted that in a medical report dated January 20, 2006, conservative treatment of Plaintiff's back pain was recommended, and that on March 23, 2006, Plaintiff was examined and was told by Jeffrey Bridges, NP, that he did not recommend a lifting restriction because there had been no spinal injury or other pathology that would keep Plaintiff from pursuing her career as an emergency medical technician. [*Doc. 18-3* at 15] (citing *Doc. 19-1* at 12-13 and at 5-6). The ALJ noted that, on January 4, 2007, the medical evidence showed that Plaintiff reported that methadone was providing good pain relief, that she was planning to start school, was trying to increase her activity levels, thought she could attend school

with minimal difficulties, was able to rise easily from a seated position, and was able to step up to the exam table without difficulty. [*Doc. 18-3* at 15] (citing *Doc. 19-2* at 55-56). The ALJ noted that Dr. Wayne reported that Plaintiff's gait was normal when she was walking outside the examining room and back and forth to the car, that Plaintiff could easily get up onto and off of the examining room table, perform maneuvers and ambulate around the room and office without difficulty. [*Doc. 18-3* at 16] (citing *Doc. 19-1* at 38-40). The ALJ also considered Dr. Kumar's, Dr. Malizzo's, and Dr. Muche's examinations of Plaintiff and their statements regrading Plaintiff's pain allegations. [*Doc. 18-3* at 16-18].

Next, the ALJ set forth several reasons, with support from the record, regarding why he did not find Plaintiff's pain allegations to be credible and why Plaintiff's pain was not disabling, such as: Plaintiff testified at the January 28, 2010, hearing that she had not driven in about five years, yet during her consultative examination on August 18, 2007, she reported that she drives a car; Plaintiff reported problems with walking, but during the consultative examination, she was observed walking with a normal gait outside the examining room and back and forth to the car; and Plaintiff reported on October 29, 2009 that she occasionally used marijuana, and then testified to a one-time use of marijuana just prior to a urine test. *Id.* at 19. Plaintiff contends that the ALJ erred by failing to give proper weight to Plaintiff's subjective complaints. [*Doc. 24* at 16]. The Court, however, finds that the ALJ sufficiently stated what evidence he relied on in determining that Plaintiff's subjective complaints of pain were not supported by objective evidence and, therefore, that Plaintiff's allegations of pain were not credible. The ALJ's failure to discuss every piece of the evidence in the record is not error. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (upholding the ALJ's decision regarding the claimant's pain allegations where the ALJ "did not simply recite the

11

general factors he considered, he also stated what specific evidence he relied on in determining that plaintiff's allegations of disabling pain were not credible," and stating that a "formalistic factor-by-factor recitation of the evidence" is not required). *See also Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."). The Court, therefore, finds that this claim should be denied.

## VI.  Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Motion to Reverse or Remand Decision of the Commissioner and Brief in Support Thereof (Doc. 24)* be **DENIED**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **AFFIRMED**.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**